UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TYWAN JOHNSON,

            Petitioner,

    v.

STU SHERMAN, Warden,

            Respondent.

Case No. 15-cv-04980-JST (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

Before the Court is the above-titled pro se petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by petitioner Tywan Johnson, challenging the validity of a judgment obtained against him in state court.  Respondent has filed an answer to the petition, and petitioner has filed a traverse.  The Court will deny the petition.

## I.  PROCEDURAL HISTORY

On May 29, 2013, an Alameda County jury found petitioner guilty of forcible oral copulation, robbery, and lesser included offenses of petty theft and battery.  2CT 397-405.[1]  On June 26, 2016 the trial court found true a prior conviction allegation and sentenced petitioner to 18 years and 4 months in state prison.  Id. at 406-12.

On February 17, 2015, the California Court of Appeal affirmed the judgment in an unpublished decision.  Ex. 8.  On June 10, 2015, the California Supreme Court denied review.  Ex. 10.  Petitioner did not pursue state collateral review.  The instant petition was filed on October 29,

---

[1] All references herein to exhibits are to the exhibits submitted by respondent in support of the answer, unless otherwise indicated.  References to "CT" and "RT" are to the Clerk's Transcript and Reporter's Transcript of the state proceedings.

United States District Court
Northern District of California

2015.

## II.  STATEMENT OF FACTS

The following background facts describing the crime and evidence presented at trial are from the opinion of the California Court of Appeal:[2]

### 1. The Brown Robbery

On November 11, 2011, Johnson was observed in an Oakland Walgreens store in the electronics aisle, holding several boxed electronics items ordinarily kept in a locked display case and which store policy required store personnel to retrieve and take directly to a register for purchase.  The store's assistant manager alerted Brown, a store greeter whose responsibilities included theft deterrence.  As Brown approached Johnson, Johnson walked toward the exit.  Johnson refused Brown's request that he pay for the items at the register and continued toward the exit.  When Brown blocked Johnson's path, Johnson pushed past Brown.  Brown knocked the items from Johnson's hands.  Johnson picked up one of the items, a DVD player, and walked toward a car in the parking lot.  He threatened to hit Brown and brandished a can of mace at Brown.  After putting the DVD player in a waiting car, Johnson again confronted Brown, attempting to strike him twice.  Johnson then left in the vehicle.  Much of the activity inside and outside the store was captured by surveillance cameras.  On August 29, 2012, Brown identified Johnson from a photo lineup as the person who took the DVD player from the store.  Both Brown and the store's assistant manager identified Johnson at trial as the robber.

### 2. The Le Robbery

On August 8, 2012, cashier Le observed Johnson on closed circuit video in the refrigerated section of an Oakland QuikStop convenience store.  Le watched Johnson put a can of Red Bull in his pocket.  Johnson came to the front counter and asked for a $3 lottery ticket and gas for his car.  Le asked Johnson if he intended to pay for the Red Bull.  Johnson insisted that he had purchased the Red Bull "across the street."  Le told Johnson that a security video camera had recorded him putting the Red Bull in his pocket, and refused to serve Johnson.  Johnson became angry, pushing a counter display rack toward Le and cutting Le's finger.  Le threw a small display rack at Johnson, and Johnson threw a larger display rack at Le.  Le was struck in the head and suffered a minor wound.  Johnson left in a waiting vehicle, and Le recorded the license plate number.  Le subsequently identified Johnson as the perpetrator in a photo lineup, and identified him in court at the time of trial.  Security camera video of the confrontation between Le and Johnson was shown to the jury.  The security camera video of Johnson placing the can of Red Bull in his pocket was not produced.  While in custody, Johnson told a jail deputy that he had gone to a QuikStop market, stolen a Red Bull, and that the clerk had resisted, giving Johnson a cut on his face.

---

[2] This summary is presumed correct.  <u>Hernandez v. Small</u>, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

### 3. Sexual Assault of Jane Doe

Jane Doe worked as a prostitute in the International Boulevard area of Oakland.  In the early morning hours of November 16, 2010, Johnson approached Jane Doe on the street and asked for a "date."  She got into the front passenger seat of Johnson's car.  Johnson drove her to an area behind an Alameda service station.  Jane Doe insisted on payment in advance for sexual services, but Johnson said he would only pay after.  He claimed to be a police officer and asked her if she wanted to go to jail.

Johnson took Jane Doe's purse from the floor of the car and rummaged through it.  He turned off a cellphone in the purse, and initially placed the purse on the back seat of the car.  He then exited the car with Jane Doe's purse, locking it in the trunk.  When Johnson returned he demanded oral sex.  When Jane Doe again said that he had to pay first, Johnson repeatedly threatened to beat her.  Johnson exposed his penis, grabbed the back of her neck and pulled her head down, forcing his penis into her mouth.  Johnson removed Jane Doe from the car and forced her to bend over the back of the vehicle.  He then forced vaginal intercourse.  Prior to intercourse, he put on two condoms, telling Jane Doe that he had to wear two condoms because she was "dirty" and a "ho"(whore).  At some point, he stopped and removed the condoms, ordering Jane Doe to perform oral sex again.  When Johnson was distracted and had his pants down, Jane Doe ran away.

Jane Doe ran into a nearby street and attempted to wave down cars.  She was spotted by Alameda Police Officer Jeffery Emmitt.  Emmitt found Jane Doe crying and shaking, and visibly distraught.  She cried hysterically as she was questioned.  She showed Alameda Police Officer Cameron Miele the area where the assault occurred.  Miele observed a pair of condoms on the ground, one inside the other.  The condoms were collected as evidence.  Miele took Jane Doe to the hospital for a sexual assault examination.  The examination revealed no physical injuries.

Miele took three statements at various times from Jane Doe the morning of the attack, each with progressively more details.  Jane Doe initially did not say she had been raped, only that she had been kidnapped from International Boulevard in Oakland and the kidnapper had stolen her purse.  She described the rape during the second and third interviews.  Recordings of the last two statements were played for the jury.

Criminalist Christine Lee received the condoms and took swabs from inside and outside without separating the two.  Epithelial cells found on the exterior contained a DNA mixture from two contributors, a major female contributor and minor contributor.  Jane Doe was identified as the likely major contributor.  A DNA profile of the minor contributor was extracted and entered into the Combined DNA Index System.

About a year and a half later, Alameda police were notified of a "hit" on the DNA profile taken in Jane Doe's case.  Based on that information, Jane Doe was shown a photo lineup including Johnson's photograph.  She identified Johnson as the person who attacked her.  Investigating officers then obtained a buccal swab from Johnson.  A comparison of DNA from the swab and the male DNA profile from the condom could not exclude Johnson as the contributor, with the probability of including a random unrelated person to the profile estimated to be one in 216 quadrillion Caucasians, one in 33 quadrillion African–Americans, one in 3.5 trillion Southeast Hispanics, and one in 1.75 quintillion Southwest

United States District Court
Northern District of California

Hispanics.

### 4. Prior Sexual Battery

Susannah Doe testified to an incident involving Johnson in April 2003.  While in the women's bathroom of a Berkeley nightclub, Johnson emerged from a stall, came up behind her, punched her in the cheek and ear, and clamped his hand over her mouth.  He reached under her shirt and fondled her breasts, pulling her onto the floor.  He punched her several times in the ribs.  Johnson attempted to push her into a bathroom stall, but fled when someone entered the bathroom.  He was apprehended by a security guard near the nightclub, and Susannah Doe identified Johnson as her attacker to police.  She testified that she sustained a broken rib and photographs of her injuries were shown to the jury, including bruises and scrapes on her arms and legs, cuts and bruises on her mouth and face.  Susannah Doe identified Johnson in court as the man who had attacked her.

### 5. Defense Case

In addition to other impeachment witnesses, Johnson presented the expert testimony of a sexual assault forensic nurse examiner, who had reviewed the report of Jane Doe's sexual assault examination and confirmed that there were no findings of injuries.  He also presented the testimony of a psychologist as an expert in perception, memory and factors affecting reliability of eyewitness identification.

People v. Johnson, No. A139190, 2015 WL 661457, at *1-3 (Cal. Ct. App. Feb. 17, 2015) (footnotes omitted).

## III. DISCUSSION

### A.    Standard of Review

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state courts' adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v.

Taylor, 529 U.S. 362, 412-13 (2000).  Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'"  Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  Williams, 529 U.S. at 405-06.  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous."  Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  Here, the California Supreme Court denied review.  Thus, the last reasoned state court decision is that of the court of appeal.

**B.      Claims**

Petitioner asserts the following grounds for relief: (1) he was denied his right to a unanimous jury verdict when the trial court declined to instruct the jury that they must

5

unanimously agree on which of the two acts of oral copulation described by the victim was the basis for their verdict; (2) he was denied his right to a fair trial by the consolidation of his robbery case with his sex crimes case and by events related to the consolidation; and (3) he was denied his right to effective assistance of counsel to the extent any of his arguments may have been forfeited by failure to object or failure to request modified instructions. The Court addresses these claims in turn.

### 1. Unanimity Instruction

Petitioner claims that the trial court erred by failing to give a unanimity instruction on the forced oral copulation count because, according to petitioner, there were two separate acts of oral copulation that could have supported this conviction. Dkt. No. 1-1 at 10-16. The state appellate court rejected this claim, applying state law, on the ground that a unanimity instruction was not necessary because the two acts constituted one transaction or course of conduct. People v. Johnson, 2015 WL 661457, at *9 (citing People v. Benavides, 35 Cal. 4th 69, 98 (2005)). The state court separately determined that any error was harmless given that petitioner proffered the same defense to both acts. See id. at *10.

Due process does not require that the jury agree as to the specific acts that constituted commission of the crimes charged. The Supreme Court has held that "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." McKoy v. North Carolina, 494 U.S. 433, 449 (1990) (footnote omitted); see also Schad v. Arizona, 501 U.S. 624, 631-32 (1991) (rule that jurors not required to agree upon single means of commission of crime, citing McKoy, applies equally to contention they must agree on one of the alternative means of satisfying mental state element of crime). In the absence of Supreme Court authority clearly establishing the rule on which he relies, petitioner is not entitled to habeas relief under 28 U.S.C. § 2254(d). See Carey v. Musladin, 549 U.S. 70, 74 (2006).

Further, even assuming there was error, this Court, for reasons similar to those expressed by the state court of appeal, agrees any such error was harmless. See Brecht, 507 U.S. at 637. The

state court reasonably concluded that the oral copulation case hinged on a single credibility defense regarding consent that could only be given or denied in toto.  A jury that deemed one of the acts nonconsensual would have necessarily concluded that the other act was also nonconsensual because it would have relied on the same evidence for both acts, i.e., that petitioner threatened to put Doe in jail, repeatedly threatened to beat her, and physically forced her to copulate him.

Accordingly, petitioner is not entitled to habeas relief on this claim.

### 2.      Fair Trial

Petitioner claims that his due process right to a fair trial was compromised in four ways: first, by the consolidation of his robbery case and sex crime case; second, by the admission of evidence describing a past sex offense; third, by a jury instruction that did not adequately limit the use of the past sex offense evidence; and fourth, by the prosecutor's closing argument urging improper use of propensity evidence.

Petitioner was initially charged in two separate cases.  On October 31, 2012, petitioner was charged by information with the November 2011 robbery of Lorin Brown and the August 2012 robbery of Jason Le.  On November 7, 2012, petitioner was separately charged by information with the November 2010 robbery, forcible oral copulation, and forcible rape of Jane Doe.  The second information alleged that petitioner had a prior serious felony conviction that qualified as a strike.  The prosecution moved to consolidate the cases.  The court granted the motion over petitioner's objection, and a consolidated information was filed on April 29, 2013.  People v. Johnson, 2015 WL 661457, at *1.

In evaluating the trial court's decision to consolidate, the California Court of Appeal reasoned as follows:

Two or more offenses "of the same class" or "connected together in their commission" may be charged and tried together, but the trial court may sever counts in the interest of justice.  (Pen.Code, § 954.)  Penal Code section 954 authorizes, but does not require, a trial court to consolidate two or more accusatory pleadings for trial in an appropriate case. (People v. Merriman (2014) 60 Cal.4th 1, 37 (Merriman).)

"The purpose underlying [Penal Code section 954] is clear: joint trial 'ordinarily avoids the increased expenditure of funds and judicial resources which may result if the charges were

to be tried in two or more separate trials.' [Citation.] 'A unitary trial requires a single courtroom, judge, and court attach[és]. Only one group of jurors need serve, and the expenditure of time for jury voir dire and trial is greatly reduced over that required were the cases separately tried. In addition, the public is served by the reduced delay on disposition of criminal charges both in trial and through the appellate process.' [Citations.]" (*People v. Soper* (2009) 45 Cal.4th 759, 772.) "[B]ecause consolidation or joinder of charged offenses ordinarily promotes efficiency, that is the course of action preferred by the law. [Citations.]" (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1220 (*Alcala*).)

Johnson takes issue with the trial court's consolidation of the Brown and Le robbery charges with the "sex offense charges," ignoring the fact that he was also charged with a robbery of Jane Doe. Moreover, the forcible oral copulation, rape, and robbery counts all alleged assaultive conduct, and are offenses "of the same class," making joinder proper under Penal Code section 954. (*People v. Capistrano* (2014) 59 Cal.4th 830, 848-849 [robbery and sexual offenses of the same class of assaultive conduct]; *People v. Kraft* (2000) 23 Cal.4th 978, 1030 [murder and sexual assault offenses of the same class]; see also *Merriman, supra,* 60 Cal.4th at p. 37.) Under such circumstances, it is a defendant's burden to show error in allowing a joint trial of the charged offenses and relief will obtain only on a clear showing of prejudice to establish the trial court's abuse of discretion. (*Alcala, supra,* 43 Cal.4th at p. 1220; see also *People v. Soper, supra,* 45 Cal.4th at p. 774.)

An abuse of discretion is shown only if the trial court's ruling "falls outside the bounds of reason." (*Alcala, supra,* 43 Cal.4th at p. 1220; *People v. Ramirez* (2006) 39 Cal.4th 398, 439.) "In making that assessment, we consider the record before the trial court when it made its ruling. [Citation.] 'The factors to be considered are these: (1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the defendant; (3) whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case.' [Citations.]" (*Alcala,* at pp. 1220–1221.) "In the context of properly joined offenses, we assess potential prejudice not under Evidence Code section 352, but instead in the context of the traditional four factors outlined above . . . ." (*Alcala,* at p. 1222, fn. 11.)

Johnson concedes here, as he did in the trial court, that the charges in the consolidated matters are of the same class and subject to consolidation under Penal Code section 954. He does not contend on appeal that any of the charges were likely to "unusually inflame the jury," and none of the charges is a capital offense. In the trial court, Johnson argued that consolidation would join a strong case for the two robberies to bolster a weak sex offense case, and that evidence relating to the offenses was not cross-admissible. He contended that consolidation would allow the prosecution to introduce "back door" character evidence against him. On appeal, Johnson focuses exclusively on the issue of cross-admissibility of evidence, contending that it was incumbent on the trial court to consider how admission of Evidence Code section 11086 evidence would affect the trial of the nonsex offense charges, and whether Susannah Doe's testimony would unfairly prejudice his defense to the nonsex offense charges.

As to cross-admissibility, however, "[Penal Code] section 954.1 expressly provides that

United States District Court
Northern District of California

'where two or more accusatory pleadings charging offenses of the same class of crimes or offenses have been consolidated, evidence concerning one offense or offenses *need not* be admissible as to the other offense or offenses before the jointly charged offenses may be tried together before the same trier of fact.' (Italics added.) Thus, 'cross-admissibility is not the sine qua non of joint trials.' [Citation.]" (*People v. Geier* (2007) 41 Cal.4th 555, 575, overruled on other grounds by *Melendez–Diaz v. Massachusetts* (2009) 557 U.S. 305.) More importantly, Johnson's argument ultimately rests on the foundational premise that the jury was allowed to improperly consider the section 1108 evidence with respect to the charged robberies of Brown and Le. We discuss and reject this underlying premise post, Johnson has consequently "failed to carry his burden of making the clear showing of prejudice required to establish that the trial court abused its discretion in declining to sever the ... charges." (*Alcala, supra,* 43 Cal.4th at p. 1227; *People v. Soper, supra,* 45 Cal.4th at p. 773.)

Johnson is correct that, even where the trial court acted well within its discretion in consolidating charges, "we must further inquire whether events after the court's ruling demonstrate that joinder actually resulted in 'gross unfairness' amounting to a denial of [his] constitutional right to fair trial or due process of law. [Citations.]" (*Merriman, supra,* 60 Cal.4th at p. 46; *People v. Rogers* (2006) 39 Cal.4th 826, 851.) As discussed post, we find no gross unfairness.

People v. Johnson, 2015 WL 661457, at *3-5 (footnotes omitted).

In evaluating whether admission of evidence of a past sex offense was state law error, the

California Court of Appeal reasoned as follows:

Section 1101, subdivision (a) provides that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Section 1108, subdivision (a), however, provides that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." Johnson contends that the court erred in admitting evidence of his assault of Susannah Doe in the trial of nonsexual offenses and failing to adequately assess the probative value of that evidence with respect to Jane Doe's allegations. We review "the admissibility of evidence of prior sex offenses under an abuse of discretion standard. [Citation.]" (*People v. Wesson* (2006) 138 Cal.App.4th 959, 969.)

Johnson's first contention is that it was error to admit evidence of the prior sexual battery at all, arguing that significant dissimilarities between the earlier offense and the charges involving Jane Doe gave such evidence only limited probative value, compared to its prejudicial effect. The prosecution offered the evidence under both sections 1108 and 1101, subdivision (b), "to prove intent, common plan or scheme, and absence of mistake or accident." The court admitted the evidence only under section 1108, and did not reach the issue of admissibility under section 1101, subdivision (b). Section 1101, subdivision (b) requires a sufficient degree of similarity between charged and uncharged offenses, but admissibility under section 1108 does not. (*Merriman, supra,* 60 Cal.4th at p. 41.) Similarity between sexual crimes increases the probative value of prior sexual offense

9

evidence.  (*People v. Lewis* (2009) 46 Cal.4th 1255, 1287.)  While lack of similarity remains relevant to the court's decision whether to exclude section 1108 propensity evidence as more prejudicial than probative, "that factor is not dispositive."  (*Merriman*, at p. 42.)

Section 1108 was intended in sex offense cases "to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility."  (*People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).)  This is because "[b]y their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence.  The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations.  Section 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes.  [Citation.]"  (*Falsetta*, at p. 915 [discussing legislative history].)  Evidence that a defendant committed other sex offenses is at least circumstantially relevant to the issue of his disposition or propensity to commit these offenses.  (*Id.* at pp. 915, 920; *People v. Loy* (2011) 52 Cal.4th 46, 61 [the Legislature has determined this evidence to be "'"particularly probative"'" in sex cases].)  Section 352 provides a constitutional "safeguard" in admitting such propensity evidence.  (*Falsetta*, at pp. 916-17.)  The Supreme Court outlined the factors that a trial court must consider in determining whether to admit evidence of other sex offenses under section 352.  These factors include the "nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense. [Citations.]"  (*Falsetta*, at p. 917.)

The record demonstrates that the court considered the relevant *Falsetta* factors and performed its duty to balance the probative value of this evidence against its prejudicial effect.  (*People v. Lewis, supra,* 46 Cal.4th at p. 1285.)  The trial court carefully considered the pleadings submitted and the argument of counsel.  The trial judge specifically addressed the similarities and dissimilarities between the assaults on Jane Doe and Susannah Doe and found the proffered evidence probative with respect to the new charges, noting that "there was violence in both cases when he couldn't get his way with the women involved."  The court found that the evidence was no more inflammatory than that anticipated on the current charges, that the probative value outweighed any prejudicial effect, and that even with admission of the section 1108 evidence, Johnson would "be able to receive a fair trial on the charged crimes in this case."  Johnson fails to demonstrate that the trial court abused its considerable discretion in admitting the evidence.

While not clearly differentiated, Johnson appears to make a second argument that it was error to admit the section 1108 evidence in a case that included unrelated nonsex offense charges.  Johnson cites several cases (*People v. Story* (2009) 45 Cal.4th 1282, 1291; *Falsetta, supra,* 21 Cal.4th at p. 916; *People v. Walker* (2006) 139 Cal.App.4th 782, 797) for the proposition that such evidence is admissible "only when he is charged with committing another sex offense."  But such a proposition is very different than saying the evidence is inadmissible unless a defendant is charged only with committing another sex

offense.  Johnson cites no case so holding, and we find none.  While the potential effect of section 1108 evidence on trial of other nonsex offense charges may be a relevant factor in the court's overall assessment of prejudice under section 352, it creates no automatic bar if the evidence is relevant to a charged sex offense.

People v. Johnson, 2015 WL 661457, at *5-6 (footnote omitted).

In addressing the instructional error claim, the California Court of Appeal reasoned as follows:

Johnson contends that the trial court erred in failing to instruct the jury about limitations on their use of the prior sexual battery evidence.  Specifically, he complains that the court did not advise the jury how to consider the evidence in connection with the current sexual assault charges, and that the court failed to advise the jury that the prior sexual battery evidence could not be considered in deciding Johnson's guilt with regard to the Brown and Le robbery charges.

The court instructed using a modified version of CALCRIM No. 375.  That instruction is designed for use when evidence of prior misconduct is introduced under section 1101, subdivision (b).  The instruction, as given, read:

"The People presented evidence that the defendant committed the offense of Sexual Battery that was not charged in this case.  [¶]  You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the offense.  Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.  [¶]  If the People have not met this burden, you must disregard this evidence entirely.  [¶]  If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of Forcible Oral Copulation and/or Forcible Rape.  The People must still prove every charge beyond a reasonable doubt."

Among other case-specific provisions, the court deleted from the pattern instruction a bracketed provision which read: "Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime."  The prosecution argued that since the purpose of section 1108 was to admit propensity evidence, jurors "don't have to say that he has a bad character but it's in their purview."  The court overruled defense counsel's objection.

Johnson does not contend that the instruction, as given, misstates the law.  He objected to the instruction only to the extent that the court deleted the prohibition on consideration of the evidence to show bad character or criminal disposition.  He did not otherwise object to use of modified CALCRIM No. 375, and when the court read the proposed language of the instruction in conference, responded "[t]hat's fine."  Johnson's contention is not that the instruction is incorrect, but that it is inadequate.

We review the legal adequacy of an instruction independently.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1210; *People v. Alvarez* (1996) 14 Cal.4th 155, 218.)  We consider a

11

challenged instruction "'not ... in artificial isolation,' but ... in the context of the instructions as a whole and the trial record" to determine "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution. [Citation.]" (*Estelle v. McGuire* (1991) 502 U.S. 62, 72, fn. omitted; *People v. Jablonski* (2006) 37 Cal.4th 774, 831.)

To the extent Johnson contends that the court was required to "articulate for the jury what probative value the evidence could have" with respect to the charged sex offenses, he is incorrect.  In the first instance, he did not ask the court to clarify or amplify the instruction in this manner, and may not complain on appeal that the instructions were incomplete in this respect.  (*People v. Cole, supra,* 33 Cal.4th at p. 1211.)  Moreover, the court is not required to instruct the jury as to the admissibility or use of other crimes evidence.  (*People v. Cottone* (2013) 57 Cal.4th 269, 293; *Falsetta, supra,* 21 Cal.4th at p. 923 ["'[i]nstructions bearing on the weight to be attached to a particular piece of evidence are properly refused'"].)  "Whether the evidence proves what the prosecution urges is a question of fact and logic requiring no additional sua sponte instruction. [Citation.]" (*Cottone*, at p. 293.)  Johnson's suggestion that the jury should have been explicitly precluded from considering the prior sexual battery as evidence of bad character or disposition to commit crime is likewise mistaken.  Evidence admitted under section 1108, unlike evidence admitted under section 1101, is propensity evidence and may be considered, once admitted, "for any proper purpose."  (*Falsetta*, at p. 922.)

Johnson is correct that the evidence was not relevant, and should not have been considered by the jury, in determining his guilt of the robbery charges.  The question is whether there is a reasonable likelihood that the jury misunderstood the applicable law.  (*People v. Pearson* (2012) 53 Cal.4th 306, 324; *People v. Kelly* (1992) 1 Cal.4th 495, 525.) Considering, as we must, the instructions as a whole (*People v. Castillo* (1997) 16 Cal.4th 1009, 1016), we find no reasonable likelihood that the jury suffered any confusion on this issue.  The contested instruction was read to the jury immediately following the instructions on rape (CALCRIM No. 1000) and forcible oral copulation (CALCRIM No. 1015).  The instruction specifically told the jury that, if it concluded Johnson had committed the assault on Susannah Doe "that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is *guilty of Forcible Oral Copulation and/or Forcible Rape*."  (Italics added.)  No reference was made to the robbery charges, and we cannot see how this instruction could reasonably be read to include the other offenses.  In addition to modified CALCRIM No. 375, the jury was also given CALCRIM No. 303, reminding them that "[d]uring the trial, certain evidence was admitted for a limited purpose.  You may consider that evidence for that purpose and no other."

Johnson cites the recent case of *People v. Jandres* (2014) 226 Cal.App.4th 340 as demonstrating that an incorrect instruction on consideration of section 1108 evidence requires reversal.  But in that case the trial court's instruction, in contrast to the instruction here, specifically told the jury that it could consider evidence of an attempted kidnapping to show that the defendant was "'likely to commit the charged crimes,'" which included nonsex offenses.  (*Id.* at p. 359.)  Moreover, the *Jandres* court found that it was error to introduce the section 1108 evidence in the first instance.  (*Id.* at p. 357.)

Johnson argues that the prosecutor, in closing argument, nevertheless urged the jury to

12

consider the evidence "as a whole" as to all the charged counts.  In addition to the specific instruction language challenged, a reviewing court considers "'the instructions as a whole[,] the jury's findings' [citation], and counsel's closing arguments to determine whether the instructional error 'would have misled a reasonable jury . . .' [citation]." (*People v. Eid* (2010) 187 Cal.App.4th 859, 883; quoting *People v. Cain* (1995) 10 Cal.4th 1, 36–37.)  We discuss the prosecutor's comments post in connection with Johnson's claim of prosecutorial misconduct, but we do not read those comments out of context as Johnson would have us do.  Further, the jury was instructed that statements of counsel, including those in closing argument, are not evidence (CALCRIM No. 222), and that if the attorneys' comments on the law conflicted with the court's instructions, the jurors were required to follow the court's instructions (CALCRIM No. 200).  We must presume that the jury followed this instruction.  (*People v. Boyette* (2002) 29 Cal.4th 381, 436; *People v. Najera* (2006) 138 Cal.App.4th 212, 224.)  We further presume that jurors both understand and follow limiting instructions given by the court on their consideration of evidence—a "'crucial assumption underlying our constitutional system of trial by jury.'"  (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.)

We find that the jury was fully apprised of the applicable law and that Johnson has failed to establish a reasonable likelihood that the jurors were misled or confused by the instructions given by the court.

<u>People v. Johnson</u>, 2015 WL 661457, at *6-8 (footnotes omitted).

Finally, concerning whether the prosecutor erred during closing argument, California

Court of Appeal reasoned as follows:

Johnson contends that the prosecutor committed misconduct by misrepresenting the law to the jury in his argument: first, by telling the jury they could consider the prior sexual battery evidence for whatever purpose they saw fit; and, second, in arguing that Johnson was a person of criminal character.  "'In general, a prosecutor commits misconduct by the use of deceptive or reprehensible methods to persuade either the court or the jury. [Citations.]' [Citation.]"  (*People v. Bradford* (1997) 15 Cal.4th 1229, 1333.)  "It is misconduct for a prosecutor to misstate the law during argument. [Citation.]"  (*People v. Otero* (2012) 210 Cal.App.4th 865, 870; *People v. Marshall* (1996) 13 Cal.4th 799, 831.)

Johnson acknowledges that he made no contemporaneous objection to these comments, and sought no admonition to the jury to disregard them.  The argument is therefore forfeited.  "'To preserve for appeal a claim of prosecutorial misconduct, the defense must make a timely objection at trial and request an admonition; otherwise, the point is reviewable only if an admonition would not have cured the harm caused by the misconduct. [Citation.]' [Citations.]"  (*People v. Bradford, supra,* 15 Cal.4th at p. 1333; see also *People v. Coddington* (2000) 23 Cal.4th 529, 595 ["'defendant bears the responsibility to seek an admonition if he believes the prosecutor has overstepped the bounds of proper comment, argument, or inquiry'"], overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn 13.)

Johnson argues that any objection would have been futile in light of the court's earlier rejection of his objections to modified CALCRIM No. 375.  We disagree.  We find nothing in the court's colloquy with counsel regarding the instructions to suggest that the court

viewed the section 1108 evidence as admissible or relevant with respect to the Le and Brown robberies, and nothing to suggest that it would have been futile for Johnson to object to any prosecutorial inference otherwise or to ask for an express admonition in this regard. We nevertheless consider the substance of this argument in the context of Johnson's claim that his trial counsel was ineffective for failing to object.

Johnson contends that the prosecution improperly argued that the evidence of the prior sexual battery on Susannah Doe could be considered, without limitation, for any purpose. He cites a statement by the prosecutor that, if the jury found by a preponderance of the evidence the allegations to be true, "you can use that information however it is you see fit." He also quotes a prosecution statement that "[i]f I prove to you 51 percent, more likely than not, that's it, then you can use that information however you see fit; however it is that you feel that's important in your decision-making process, you can use that." However, as the People point out, both statements were made in connection with argument specifically addressed to the sexual assault charges regarding Jane Doe. And in discussing the evidence regarding Susannah Doe, the prosecutor focused on the elements of sexual battery (CALCRIM No. 935) that he was required to prove. No reference was made to the Le and Brown robbery charges, and nothing in the context of the prosecutor's remarks can be reasonably interpreted to suggest such a connection.

While not expressly referencing the section 1108 evidence, Johnson insists that the prosecution otherwise alluded to it by arguing to the jury that all evidence presented at trial should be considered as a whole, and the evidence showed Johnson was simply a person of criminal character. Johnson cites specifically to the prosecutor's closing statements: "What we have seen here throughout the course of this trial in the couple of weeks we have been together is that the Defendant is a man who will take what he wants, and it doesn't really matter if anyone is going to get in his way or if anyone is going to stop and challenge him, because he is going to take what he wants, whether it be a bunch of DVD players from a Walgreens, whether it be a Red Bull from a store, or whether it be sex. It doesn't really matter, because no one is going to stop Tywan Johnson from getting what he wants. And if you do, if you do try to stop him, if you do try and stand in front of him at the store, if you do tell him that you're going to not let him have business there, if you're going to now allow him to walk out with that Red Bull, or if you just tell him no during the course of a sexual encounter, he's going to take it anyway. And that's just what we know about him. We have seen with our own two eyes on video that the Defendant has absolutely no impulse control. He can't control his behavior. Bottom line." Johnson complains that in summing up his argument to the jury, the prosecutor again attacked Johnson's character as someone who would take what he wanted by force and violence if necessary: "So I go back to what I told you from the very beginning. Everything about Tywan Johnson that we know in this case supports the fact that he is the type of person who cannot control his impulses. He is the type of person who is willing to steal DVD players, not care whether or not anyone sees him, and then if you try and stop him, he'll get violent. [¶] He's the kind of person that's willing to take a Red Bull. If you tell him he has to pay for it or you tell him you're not going to serve him anymore, he's the type of person who is going to throw metal shelves at their head. That's just the type of person he is. He reacts with violence. [¶] And then, of course, we don't have it on video, but you're going to be asked to determine whether or not Tywan Johnson is the type of person who would try to talk his way into free sex with a prostitute, and if she says no, whether he would respond with force and fear. And the answer to that question, is Tywan Johnson

that kind of person?  Ask Susannah Doe what she thinks.  Ask Susannah Doe.  He is that type of person, because this is what he did."

Finally, Johnson cites as misconduct the prosecutor's statement in rebuttal argument: "I'm going to end by saying the exact same thing I told you from the very beginning.  The Defendant cannot control his impulses.  He cannot control his behavior.  When put in a situation where someone challenges him, where someone actually, God forbid, says, 'No, you can't do what it is that you came here to do,' he reacts.  He reacts, plain and simple. We saw it with our own two eyes.  No, you can't have that set of DVD players.  Okay.  I'll threaten you with mace.  I'll throw punches.  No, you can't have that Red Bull.  Okay.  I'll throw a shelf or two at you.  Susannah Doe told you what kind of person he is and what he did to her in that nightclub.  That's what he did.  You saw the photos.  You saw the injuries.  And [Jane] Doe told you what he did to her.  First he tried to talk her out of it—to talk her into it, I should say.  I'll just tell her I'm the police.  Maybe I'll get some free sex. She said no.  He escalated and escalated and escalated until he forced himself on her."

We evaluate a prosecutor's conduct under an objective standard, and it need not be shown that the prosecutor acted in bad faith or with appreciation of the wrongfulness of his or her conduct.  (*People v. Bradford, supra,* 15 Cal.4th at p. 1333.)  "When a claim of misconduct is based on the prosecutor's comments before the jury, '"the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion."'  [Citations.]"  (*People v. Friend* (2009) 47 Cal.4th 1, 29.) "In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.  [Citation.]" (*People v. Frye* (1998) 18 Cal.4th 894, 970, disapproved on a different ground by *People v. Doolin* (2009) 45 Cal.4th 390, 421 & fn. 22.)

We cannot read the statements as Johnson urges.  The references to Susannah Doe's testimony were again made in direct reference to the sexual assault charges involving Jane Doe.  Rather than a general attack on Johnson's character, the comments emphasized that Johnson's behavior, in his resort to violence, was consistent in all of the charged offenses. Such comments on the evidence are not misconduct.

The jury was instructed to consider each charge separately (CALCRIM No. 3515).  As noted *ante,* the instruction given on consideration of the prior sex offense evidence specifically directed its consideration to the current forcible rape and forcible oral copulation charges, and was given immediately following the instructions on the elements of rape and forcible oral copulation.  The jury was also instructed to follow the court's instructions on the law if they conflicted with any statements made by counsel (CALCRIM No. 200).  "[T]he 'court's instructions, not the prosecution's argument, are determinative, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade."'  [Citation.]"  (*People v. Mendoza* (2000) 24 Cal.4th 130, 173.)

Taken in context, and in light of the instructions properly given, we find no reasonable likelihood that the jury would have understood the prosecutor's remarks in the fashion Johnson suggests and we find no misconduct.

People v. Johnson, 2015 WL 661457, at *10-12.

15

United States District Court
Northern District of California

### a.        Consolidation of Robbery and Sex Offense Cases

Petitioner claims that the consolidation of his "weak" rape and oral copulation case with the "strong" robbery cases violated his due process right a fair trial.  Dkt. No. 1-1 at 18-24. Improper joinder in itself does not violate the Constitution.  United States v. Lane, 474 U.S. 438, 446 n.8 (1986).  However, a joinder of counts may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process.  Grisby v. Blodgett, 130 F.3d 365, 370 (9th Cir. 1997); Herd v. Kincheloe, 800 F.2d 1526, 1529 (9th Cir. 1986).

There is a "high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible."  United States v. Lewis, 787 F.2d 1318, 1322 (9th Cir. 1986) (quoting United States v. Daniels, 770 F.2d 1111, 1116 (D.C. Cir. 1985).  But joinder generally does not result in prejudice if the evidence of each crime is simple and distinct (even if the evidence is not cross-admissible), and the jury is properly instructed so that it may compartmentalize the evidence.  Bean v. Calderon, 163 F.3d 1073, 1085-86 (9th Cir. 1998); see Davis v. Woodford, 384 F.3d 628, 638-39 (9th Cir. 2004) (denial of motion to sever trial of capital and noncapital charges based on separate incidents not a violation of due process because evidence was cross-admissible, the weight of evidence with respect to each incident was roughly equal, the evidence as to each incident was distinct, and the jury was properly instructed); Sandoval v. Calderon, 241 F.3d 765, 773 (9th Cir. 2001) (given the strength of the prosecution's case against petitioner on both sets of murders and the cross-admissibility of the evidence on each set, petitioner's trial was not actually prejudiced by the joinder).

A federal court reviewing a state conviction under 28 U.S.C. § 2254 does not concern itself with state law governing severance or joinder in state trials.  Grisby, 130 F.3d at 370.  Its inquiry is limited to the petitioner's right to a fair trial under the United States Constitution.  Id.  To prevail, therefore, the petitioner must demonstrate that the state court's joinder resulted in prejudice so great that it rendered his trial fundamentally unfair.  Id.  In addition, the impermissible joinder must have had a substantial and injurious effect or influence in determining the jury's verdict.  Sandoval, 241 F.3d at 772.

16

Here, the state court of appeal reasonably rejected petitioner's claim that a weak case had been joined with a strong one.  The evidence of both the sexual assault and the robberies was compelling.  Victims' testimony and corroborating video surveillance evidence supported the robbery charges.  1RT 268-80, 345-57.  The victim's testimony, DNA evidence, prior crime evidence, and an officer's observations of the victim's demeanor immediately after the crime supported the sex offense charges.  1RT 214-23, 474-76, 496-97, 513-33; 2RT 765-74, 834-74; 3RT 942-48.  The evidence of one was not weaker than the other so as to have risked petitioner being prejudiced by the spillover effect from one charge to the other.  See Sandoval, 241 F.3d at 772.

Regarding the introduction of prior sex offense evidence into his robbery case, the state court reasonably concluded that this did not result in substantial prejudice because there was no reasonable likelihood that the jury, acting on the given instructions, would have treated the past sex offense as propensity evidence to prove robbery.  As explained by the court of appeal, the jury instructions regarding the use of the prior sex offense evidence immediately followed the instructions on rape and forcible oral copulation and specifically warned that the evidence was not sufficient by itself to prove guilt "of Forcible Oral Copulation and/or Forcible Rape."  2 CT 378; 4RT 1313.  If the prior sex offense was not sufficient on its own to prove guilt of other forcible sex crimes, the jury would have understood that it would not be sufficient to prove unrelated robberies.  Additionally, because the instruction that the uncharged offense "is only one factor to consider along with all of the other evidence in the case" came directly before the instruction anchoring the context to the charged sex offenses, it was reasonable for the state court to conclude that the jury would not have applied evidence of the prior sex offense to prove guilt on the robbery charges.  Review of the record confirms that the court of appeal's conclusion was not based on an unreasonable determination of the facts in light of the entire trial record.

Accordingly, petitioner is not entitled to habeas relief on this claim.

**b.      Admission of Evidence of Past Sex Offense**

Petitioner claims the trial court improperly admitted evidence of a past sex offense involving Susannah Doe, exacerbating any prejudice that resulted from the consolidation.  Dkt.

United States District Court
Northern District of California

No. 1-1 at 25-28.

A federal writ of habeas corpus will not be granted for an erroneous admission of evidence unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir. 1986). Evidence violates due process only if "there are *no* permissible inferences the jury may draw from the evidence." Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).  Evidence must "be of such quality as necessarily prevents a fair trial" for its admission to violate due process.  Id. (quoting Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir. 1986)).  Notwithstanding the above, the Ninth Circuit has observed that:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process.  Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.

Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (internal citation omitted) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)).  Therefore, "[u]nder AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court."  Id. (quoting 28 U.S.C. § 2254(d)).  In addition, the Supreme Court has left open the question of whether admission of propensity evidence violates due process.  Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991); see also Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006) (recognizing that the Supreme Court has expressly concluded that whether a petitioner's due process right is violated by the admission of propensity advice is an "open question").  Pursuant to these authorities, the state appellate court's rejection of petitioner's due process claim here does not support the granting of federal habeas relief under AEDPA because a California trial court's admission of evidence pursuant to section 1108 of the California Evidence Code to show propensity does not violate any principle of clearly established federal law.  Holley, 568 F.3d at

1   1101.

2          Accordingly, petitioner is not entitled to habeas relief on this claim.

3                  c.      **Jury Instructions**

4          Petitioner claims that the jury instructions were insufficient to inform the jurors of the

5   limited purpose of the evidence of the prior sex offense.  Dkt. No. 1-1 at 28-36.

6          Due process requires that "'criminal defendants be afforded a meaningful opportunity to

7   present a complete defense.'"  Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006) (quoting

8   California v. Trombetta, 467 U.S. 479, 485 (1984)).  Therefore, a criminal defendant is entitled to

9   adequate instructions on the defense theory of the case.  Conde v. Henry, 198 F.3d 734, 739 (9th

10  Cir. 2000) (error to deny defendant's request for instruction on simple kidnapping where such

11  instruction was supported by the evidence).  The defendant is not entitled to have jury instructions

12  raised in his or her precise terms where the given instructions adequately embody the defense

13  theory.  See United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996); United States v.

14  Tsinnijinnie, 601 F.2d 1035, 1040 (9th Cir. 1979).

15         A state trial court's refusal to give an instruction does not by itself raise a ground

16  cognizable in a federal habeas corpus proceeding.  Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th

17  Cir. 1988).  The error must so infect the trial that the defendant was deprived of the fair trial

18  guaranteed by the Fourteenth Amendment.  Id.

19         "Whether a constitutional violation has occurred will depend upon the evidence in the case

20  and the overall instructions given to the jury."  Duckett v. Godinez, 67 F.3d 734, 745 (9th Cir.

21  1995) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973) and Henderson v. Kibbe, 431 U.S. 145,

22  155 (1977)).  The question is "whether, under the instructions as a whole and given the evidence

23  in the case, the failure to give the requested instruction rendered the trial so fundamentally unfair

24  as to violate federal due process."  Id. at 746 (citing Cupp, 414 U.S. at 147).

25         The omission of an instruction is less likely to be prejudicial than a misstatement of the

26  law.  See Walker v. Endell, 850 F.2d 470, 475-76 (9th Cir. 1988) (citing Henderson, 431 U.S. at

27  154).  Thus, a habeas petitioner whose claim involves a failure to give a particular instruction

28  bears an "'especially heavy burden.'"  Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997)

1  (quoting Henderson, 431 U.S. at 155).  The significance of the omission of such an instruction

2  may be evaluated by comparison with the instructions that were given.  Murtishaw v. Woodford,

3  255 F.3d 926, 971 (9th Cir. 2001) (quoting Henderson, 431 U.S. at 156).

4        As explained above, the jury instructions regarding the prior sex offense were given in a

5  context where they were only tied to the forcible oral copulation and rape charges, and the trial

6  court specifically warned that the evidence was not sufficient by itself to prove guilt "of Forcible

7  Oral Copulation and/or Forcible Rape."  2CT 378; 4RT 1313.  In light of the context and the

8  instructions viewed as a whole, the state appellate court reasonably concluded that there was no

9  reasonable likelihood that the jury would have read these instructions to permit use of the prior sex

10  offense as evidence of the robbery charges.  Indeed, the jury's careful distinction in differentiating

11  between the charges—acquitting petitioner of the robberies charged as to Le and Doe while

12  finding him guilty of the robbery charged as to Brown, acquitting petitioner of the greater offense

13  of robbery as to Le while convicting him of the lesser included offense of petty theft, and

14  acquitting him of rape while finding him guilty of forced oral copulation—demonstrates that the

15  jury knew how to compartmentalize the evidence for each charge rather than assuming guilt in one

16  act based on proof of guilt in another act.

17        Finally, even assuming the instructions were somehow erroneous, petitioner fails to

18  demonstrate that the error had a substantial and injurious effect in determining the jury's verdict.

19  See Brecht, 507 U.S. at 637.  Given the strong evidence of guilt presented at trial as discussed

20  above, the Court is not convinced that deletion of the bracketed provision from CALCRIM No.

21  375 influenced the jury.

22        Accordingly, petitioner is not entitled to habeas relief on this claim.

23                    d.        Prosecutorial Misconduct

24        Petitioner claims that prosecutorial misconduct during closing argument exacerbated the

25  prejudice that resulted from the consolidation of the robbery and sex offense cases.  Dkt. No. 1-1

26  at 36-40.  Specifically, he objects to the prosecutor's statement that (1) the jury could "consider

27  the Susannah Doe evidence for whatever purpose they saw fit," without limiting its consideration

28  only to the charged sex offenses, and that (2) petitioner should be convicted simply for being a

United States District Court
Northern District of California

1   person of criminal character who is willing to take whatever he wants by violence.  Id. at 36.

2       Prosecutorial misconduct is cognizable in federal habeas corpus; "the appropriate standard

3   of review for such a claim . . . is the narrow one of due process, and not the broad exercise of

4   supervisory power."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks

5   omitted).  A defendant's due process rights are violated when a prosecutor's misconduct renders a

6   trial fundamentally unfair.  Id.; Smith v. Phillips, 455 U.S. 209, 219 (1982) (noting, "the

7   touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of

8   the trial, not the culpability of the prosecutor").  Under Darden, the first issue is whether the

9   prosecutor's remarks were improper; if so, the next question is whether such conduct "infected the

10   trial with unfairness."  Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005).  A prosecutorial

11   misconduct claim is decided by "examining the entire proceedings to determine whether the

12   prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a

13   denial of due process."  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (internal quotation

14   marks omitted).

15       A federal court will not review questions of federal law decided by a state court if the

16   decision also rests on a state law ground that is independent of the federal question and adequate

17   to support the judgment.  See Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  In cases in

18   which a state prisoner has defaulted his federal claims in state court pursuant to an independent

19   and adequate state procedural rule, federal habeas review of the claims is barred.  See id. at 750.

20   The rule cited here by the court of appeal, specifically, that a defendant must make a

21   contemporaneous objection at trial in order to preserve an issue on appeal, has been found to be a

22   sufficiently independent and adequate procedural rule to support the denial of a federal petition on

23   grounds of procedural default.  See Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004)

24   (finding claim procedurally defaulted based on California's contemporaneous objection rules).

25   The claim is therefore procedurally defaulted.

26       Although the court of appeal found that the prosecutorial misconduct claim was

27   procedurally waived, it also found that the claim failed on the merits.  Based on a review of the

28   record, and applying the legal principles on prosecutorial misconduct as outlined above to this

United States District Court
Northern District of California

21

claim, the Court finds that the court of appeal's conclusion was not based on an unreasonable determination of the facts in light of the entire trial record. Specifically, reviewing the prosecutorial comments in context, it is clear that the prosecution was urging the jury to use the evidence of petitioner's prior sexual battery as propensity evidence with regard to the sexual assault charged here. Thus, on the merits, there was no prosecutorial misconduct.

Accordingly, petitioner is not entitled to habeas relief on this claim.

### 3.    Ineffective Assistance of Counsel

Petitioner claims that he received constitutionally ineffective assistance of counsel to the extent that his instructional arguments were forfeited due to counsel's failure to request additional modifications or that his prosecutorial misconduct claims were forfeited due to counsel's failure to object. Dkt. No. 1-1 at 42-43.

Claims of ineffective assistance of counsel are examined under Strickland v. Washington, 466 U.S. 668 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. In order to prevail on a claim of ineffectiveness of counsel, a petitioner must establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, id. at 687-88, "not whether it deviated from best practices or most common custom," Harrington v. Richter, 562 U.S. 86, 105 (2011) (citing Strickland, 466 U.S. at 690). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Id. at 104 (quoting Strickland, 466 U.S. at 689).

Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112 (citing Strickland, 466 U.S. at 693). It is unnecessary for a federal court considering an ineffective assistance of counsel

United States District Court
Northern District of California

1    claim on habeas review to address the prejudice prong, i.e., the second factor of the <u>Strickland</u> test,

2    if the petitioner cannot establish incompetence, as required under the first prong.  <u>Siripongs v.</u>

3    <u>Calderon</u>, 133 F.3d 732, 737 (9th Cir. 1998).

4         The standards of both 28 U.S.C. § 2254(d) and <u>Strickland</u> are "highly deferential, and

5    when the two apply in tandem, review is doubly so."  <u>Richter</u>, 562 U.S. at 105 (quotation marks

6    omitted).  "[T]he question [under § 2254(d)] is not whether counsel's actions were reasonable.

7    The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s

8    deferential standard."  <u>Id.</u>

9         The state appellate court rejected petitioner's claim based on failure to show prejudice,

10   having already rejected petitioner's instructional error and prosecutorial misconduct claims.  <u>See</u>

11   <u>People v. Johnson</u>, 2015 WL 661457, at *12.

12        First, petitioner argues that defense counsel performed deficiently by failing to request

13   additional modifications to the court's instructions.  As the last reasoned opinion of the state court

14   noted, the trial court was "not required to instruct the jury as to the admissibility or use of other

15   crimes evidence," that the jury was permitted to consider propensity "for any proper purpose," and

16   that there was "no reasonable likelihood that the jury suffered any confusion" regarding whether

17   the prior sex offense could be used in determining the guilt of the robbery charges.  <u>People v.</u>

18   <u>Johnson</u>, 2015 WL 661457, at *7-8.  Given that California law provides that a court need not

19   instruct the jury as to the admissibility or use of other sex crimes evidence under California Penal

20   Code section 1108, it was within objective standards of professional norms not to request an

21   elaboration on the use of the evidence here.  <u>See</u> <u>People v. Cottone</u>, 57 Cal. 4th 269, 293

22   (2013).

23        Defense counsel may have tactically calculated that the likelihood of the jury actually

24   misunderstanding the relevance of the prior sex offense would be low and that, by contrast, the

25   potential payoff from letting any prosecutorial overreach backfire would be high.  Indeed, defense

26   counsel developed an overreach argument from opening statement to closing argument.  <u>See</u> 1RT

27   180-81, 189 (delivering opening statement that prosecutor overcharged the robberies, noting that

28   "they have nothing to do with rape allegations," and accusing prosecutor of relying on bad

United States District Court
Northern District of California

23

1    impressions to make his case); 4RT 1231-32, 1265, 1269, 1273 (reiterating theme during closing

2    argument that jury must look at each charge separately and not fall into the trap of finding

3    petitioner guilty of "overcharged" crimes merely because he might be guilty of other bad acts).

4    The closing argument's precise focus on treating each charge and act separately demonstrates that

5    defense counsel was not neglectful or unaware of the potential effects of the prior sex offense. See

6    Weighall v. Middle, 215 F.3d 1058, 1063 (9th Cir. 2000) (rejecting deficient performance

7    allegation where "evidence, the general instruction, and counsel's closing argument" put the issue

8    "squarely before the jury").

9         Second, petitioner argues that defense counsel performed deficiently by failing to object to

10   the prosecutor's closing argument. Strickland requires a court to "indulge a strong presumption

11   that counsel's conduct falls within the wide range of reasonable professional assistance." Woods

12   v. Donald, 135 S. Ct. 1372, 1375 (2015) (quoting Strickland, 466 U.S. at 689); see United States

13   v. Molina, 934 F.2d 1440, 1448 (9th Cir. 1991) (noting that, even failing to object because one

14   was focusing on polishing one's own closing argument could qualify as within the range of

15   reasonable professional assistance). Declining to make an objection, even if valid, is not

16   necessarily grounds for deficient performance. "[M]any trial lawyers refrain from objecting during

17   closing argument to all but the most egregious misstatements by opposing counsel on the theory

18   that the jury may construe their objections to be a sign of desperation or hyper-technicality."

19   Garcia v. Bunnell, 33 F.3d 1193, 1200 (9th Cir. 1994) (quoting Molina, 934 F.2d at 1448).

20   Likewise, given that the prosecutor's statements regarding the use of sex offense evidence

21   occurred in the context of reviewing the sex offense charges, defense counsel in this case could

22   have reasonably decided to call attention to the proper use of the sex offense charges by his own

23   closing argument, rather than by an objection and admonition to an argument that would not be

24   misinterpreted if left alone.

25        In any event, petitioner's ineffective assistance claims are based on claims the Court has

26   addressed above and found unavailing. As discussed above, there was no reasonable likelihood

27   that the jury misapplied the instructions or interpreted the prosecutor's closing argument to use the

28   prior sex offense as evidence of the robbery charges. Under such circumstances, petitioner is

United States District Court
Northern District of California

24

1   unable to show prejudice under the second prong of the <u>Strickland</u> test, and thus has not shown the

2   state court's decision as to these claims involved either an unreasonable application of Supreme

3   Court law or an unreasonable determination of the facts.

4           Accordingly, petitioner is not entitled to habeas relief on this claim.

5   **C.      Certificate of Appealability**

6           The federal rules governing habeas cases brought by state prisoners require a district court

7   that issues an order denying a habeas petition to either grant or deny therein a certificate of

8   appealability.  <u>See</u> Rules Governing § 2254 Case, Rule 11(a).

9           A judge shall grant a certificate of appealability "only if the applicant has made a

10  substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the

11  certificate must indicate which issues satisfy this standard.  <u>Id.</u> § 2253(c)(3).  "Where a district

12  court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c)

13  is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district

14  court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S.

15  473, 484 (2000).

16          Here, petitioner has not made such a showing, and, accordingly, a certificate of

17  appealability will be denied.

18                                 **IV.  CONCLUSION**

19          For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a

20  certificate of appealability is DENIED.

21          The Clerk shall enter judgment in favor of respondent and close the file.

22          IT IS SO ORDERED.

23  Dated:  November 22, 2016

24                                 _____

25                                            JON S. TIGAR
                                       United States District Judge

26

27

28

United States District Court
Northern District of California